UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
UNITED STATES OF AMERICA    )
          Plaintiff         )
                            )  Cr.# 04-10288-RWZ
     v.                     )
                            )
KEITH BEHSMAN               )
          Defendant         )
_____    )
```

**SENTENCING MEMORANDUM OF DEFENDANT PURSUANT
TO F.R.Cr.P. RULE 32(a)(C) and 18 U.S.C. § 3553(a)**

This memorandum is being submitted to assist this Honorable Court in its determination of the most appropriate sentence for Mr. BEHSMAN by addressing each of the available sentencing options under the provisions of 18 U.S.C. § 3553 (a) as now constitutionally required by the Supreme Court. This memorandum will supplement the PSR and submit reasons why this Court should consider and grant a sentence that is in variance with the advisory Guideline level based on all the factors of 3553(a) and **numerous factors in mitigation.**

In the post United States v. Booker 543 U.S. __, 125 S. Ct. 738 (2005) and Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004) world this Honorable Court is free to look at **all** the factors of 18 U.S.C. § 3553(a) in imposing a "reasonable sentence"  that is "sufficient, but not greater than necessary to comply with the purposes set forth [ in this provision]."

Of particular note, Justice Kennedy, in his 2003 speech to the American Bar Association openly commented on the unfair

1

severity of federal sentences and the harmful effects that the rigid application of the Sentencing Guidelines had on individuals and society as well as the Guidelines readily apparent failure:

"Our resources are misspent, our punishments too severe, our sentences too long....In the federal system the sentencing guidelines are responsible in part for the increase in prison terms....The Federal Sentencing Guidelines should be revised downward..."

In the instant case, Mr. BEHSMAN stands before this Honorable Court ready to be sentenced for his participation in a small time street level conspiracy involving the distribution of oxycodone. He is currently 27 years of age. Prior to the instant case, and Mr. BEHSMAN's first involvement with hard drugs which began when he was approximately 24 years of age, he was a hard working individual, even serving a period of time in the U.S. Air Force until a physical condition regarding his feet caused his departure. See PSR ¶s 150-152.

Mr. BEHSMAN was only involved in the case at bar as a person who made introductions of the government agents to the suppliers in order to satisfy his own habit. According to his brother, Mr. BEHSMAN's only involvement was "to support his drug habit, ...[he] did not derive any profit from his involvement in the instant offense because...when he last visited {him} he...was living out of his vehicle. PSR ¶ 135.

KEITH BEHSMAN was, himself, a major user of oxycontin who the government could not have paid enough to make the introductions to the suppliers and dealers. Despite this

2

limited role, Mr. BEHSMAN has candidly admitted his involvement at an early stage of the proceedings. He respectfully submits that, for Guideline purposes only, he generally agrees with Probation (other than purported relevant conduct which was the result of a reverse sting that was never carried out) and agrees that he should be held responsible for 40.9058 grams of oxycodone which equals a marijuana equivalency of 274,069 grams or 274.07 kilograms. The Guideline base level would be **26** (100-400 kilos). See PSR ¶s 96-97. The amount distributed in a protected area would be the same, level 26, approximately 165 kilograms). If 2 levels are added pursuant to U.S.S.G. § 2D1.2(1) then the **advisory** base guideline range is **28**.

Under Guideline calculations, however, Mr. BEHSMAN should also be entitled to a *mitigating* role in the offense reduction within the meaning of U.S.S.G. § 3B1.2. He was akin to a simple "courier" who clearly was not indispensable to the transaction. **He had no control over the amount of the drugs, to whom they will be distributed, or the financial arrangements** once the introductions were made. Therefore, a **4 level decrease** in role may be appropriate when a defendant, such as he, is among the least culpable of those involved in the criminal activity. The advisory Guideline adjusted offense level should be **24** and the advisory Guideline offense level, after acceptance of responsibility should be found to be **21**.

In that Mr. BEHSMAN was the first to plead at an early stage of the proceedings, the Court may also want to consider whether a **4 level reduction under U.S.S.G. § 5K3.1** is also appropriate. Although the government is required to make such

a motion in an "authorized" district, it would appear that the fundamental constitutional principal of equal protection would require that application of that Guideline departure to all similarly situated defendants if the goal of eliminating unwarranted disparities is to met.  The total **Guideline** level prior to any other calculation for departure or factor in mitigation is thus **17.**  Such an offense level for a criminal history category II offender results in a sentence of **27-33 months.**

No statutory mandatory minimum sentence applies to the case other than the one year mandatory term of incarceration required by 21 U.S.C. § 860(a) for distribution within a public housing development.  This Honorable Court is, therefore, free to look at disparity in comparative sentences for similar conduct that would help in imposing a just and fair sentence. **Attached hereto** is a pre-Guideline calculation of schedule III drugs such as oxycodone from the Parole Guidelines in effect in 1987.  Those calculations result in a calculation of **Category Five... Good Salient Factor Score for a total sentence of 36-48 months.**  Mr. BEHSMAN is responsible for distributing and aiding in the distribution of roughly 40 grams of a controlled substance.  A gram of oxycodone is equivalent to .2 gram of heroin. <u>See</u> attached Pre-Guideline, parole guideline, page 44. In essence, he therefore is responsible for about 8 grams of heroin, and is thus calculated as a medium level, Category V distributer, page 42.  After compilation of his "salient factor score" of 6 the guideline range would be **36-48 months prior to**

4

**any consideration for peripheral role or other factor in mitigation.** See page 28.   At time of sentencing Mr. BEHSMAN will already have been in maximum security "detention" (with extremely limited privileges and without rehabilitative or treatment programs or for approximately one year.

**FACTORS IN MITIGATION**

Mr. BEHSMAN respectfully submits that this Honorable Court could take into consideration the following factors in mitigation that are consistent with the "departures" that are addressed in the Guidelines and other factors that would assist the Court in determining a reasonable sentence that may be in variance with the total Guideline calculation but that are consistent with 18 U.S.C. § 3553(a):

**ABERRANT BEHAVIOR ...**    There is limited question that the instant offense, assisting in the acquisition of small amounts of oxycontin which was never for profit, see PSR ¶ 135  and which occurred during a period of addiction is aberrant behavior from an otherwise law abiding life.  Mr. BEHSMAN's limited criminal history, all tied to his drug use, followed his exit from the military in 2003.  Prior to that he was living a hard working and most productive life.  Even with his drug habit he was constantly working, although it is clear that his addiction caused his work to suffer. See PSR ¶s 151 &158. This factor in mitigation includes a broader common law definition than the limited one included in the Guidelines. See United States v. Grandmaison, 77 F. 3d. 555 (1st Cir. 1996).

5

**NEED FOR TREATMENT AND REHABILITATION**... Mr. BEHSMAN has suffered a recent, but protracted history of substance abuse. PSR ¶s 139-147. Prior to the instant offense he never had been in any substance abuse treatment program. It is clear that Mr. BEHSMAN is an oxycontin drug addict who only involved himself with the activity solely because of his addiction. See PSR ¶ 142. Coupled with his minimal or peripheral role of introducing the agents to the suppliers (who knew that they could use him because of his addiction), Mr. BEHSMAN's history of drug abuse is a significant factor under 18 U.S.C. § 3553(a)(2)(D) because it evidences his need for treatment.

> *There is no magic bullet to eradicate drug abuse. Drugs purport to provide an instant answer to boredom, anxiety or pain. But the solution to the drug problem for the individual and the country is anything but instant. Treating drug addiction requires patience, compassion, and a will to carry on.*
>
> *Barry McCaffrey*
> *Director, Office of National Drug Control Policy*

**OVERSTATEMENT OF CRIMINAL HISTORY**  Mr. BEHSMAN has a small history of Massachusetts misdemeanors that are a direct result of his substance abuse that has kept him from making rational choices.  Once that physical addiction, and its causes are treated, and based on his substantial prior history of gainful employment, it is unlikely that he will re-offend.

**EARLY RESOLUTION**  Mr. Behsman's early admission of wrongdoing, without any kind of plea agreement with the government,  is likely to instigate others to plead guilty rather than proceed to trial and will likely save the government significant resources beyond that typically associated with "acceptance of

6

responsibility." Such a "departure" is consistent with that contemplated by U.S.S.G. § 5K2.3 discussed above.

**RELATIVE CULPABILITY AND PERIPHERAL OR MINOR ROLE**.  There is little question that Mr. BEHSMAN is one of the least culpable of those involved In most of the transactions, Mr. BEHSMAN would simply direct the buyer or agent to the individual doing the actual selling for the simple benefit of a $ 100 or $200 (offered by the agents) and a few pills to support his habit. See e.g. PSR ¶s 18, 21 and 37.  Mr. BEHSMAN's co-defendants were clearly the suppliers according to the government's version of the offense.  The typical Guideline calculations, inadequately fail to distinguish a supplier from an addict "introducing" broker, limiting role reductions to 2-4 levels and sentences that may well be less than a year or two difference.  Mr. BEHSMAN respectfully submits that his minor role in the transactions is greater than that taken into account by the Guidelines.

  Lastly, Mr. BEHSMAN respectfully submits that even if any one of the above reasons do not provide a sufficient ground for the sentence requested here, **the totality of circumstances** justify the "reasonable sentence" requested that may well be in variance with the Guideline calculations.

### RECOMMENDED SENTENCE

  Mr. BEHSMAN, has now spent approximately **11 and a half months actual time** in custody pending these proceedings which, after 12 months and one day have expired he would be entitled to 47 days good time pursuant to 18 U.S.C. § 3624(b).  Such

would be equal to a sentence of approximately **14 months.** A sentence of year and a day would also satisfy the one year mandatory term of incarceration required by 21 U.S.C. § 860(a). Mr. BEHSMAN would also benefit from placement in a Community Treatment Center which could be ordered as a condition of supervised release. Mr. BEHSMAN, therefore requests that he be sentenced to **a term of one year and one day, six years of supervised release with a condition thereof that he serve a six months in a CTC, all with credit for time served.** Such a sentence would avoid disparity, reflect the seriousness of the offense and provide Mr. BEHSMAN with needed treatment and rehabilitation. It is also a "reasonable sentence" reflecting all the factors in 18 U.S.C. § 3553(a) that is well within the discretion of this Honorable Court.

Date: June 3, 2005                    Respectfully submitted,

                                       KEITH BEHSMAN,
                                       By his attorney,

                                       *s/Michael C. Bourbeau*
_____           Michael C. Bourbeau (BBO #545908)
                                       Bourbeau and Bonilla
                                       77 Central St, 2nd Floor
                                       Boston, MA 02109
                                       (617) 350-6565